Matthew C. Helland, CA State Bar No. 250451
helland@nka.com
NICHOLS KASTER, LLP
One Embarcadero Center, Suite 720
San Francisco, CA  94111
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Kai Richter, MN Bar No. 0296545*
krichter@nka.com
G. Tony Atwal, MN Bar No. 0331636*
tatwal@nka.com
*(admitted **pro hac vice**)
NICHOLS KASTER, PLLP
80 South 8th Street, 4600 IDS Center
Minneapolis, MN  55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870

Shanon J. Carson, PA Bar No. 85957*
scarson@bm.net
Patrick F. Madden, PA Bar No. 309991*
pmadden@bm.net
*(admitted **pro hac vice**)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000

Attorneys for Plaintiff and the Putative Classes

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Arley and Valerie Leghorn, as individuals, as representatives of the classes, and on behalf of the general public,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>Wells Fargo Bank, N.A., Wells Fargo Insurance, Inc., QBE Insurance Corporation, and QBE First Insurance Agency, Inc.,<br><br>                    Defendants. | **PLAINTIFFS' OPPOSITION TO WELLS FARGO BANK'S AND WELLS FARGO INSURANCE'S MOTION TO DISMISS AND STRIKE**<br><br>Date:  None Set<br>Time: None Set<br>Courtroom: G<br>The Hon. Joseph C. Spero<br>Action Filed:    February 19, 2013<br>Trial Date:      None Set |

1

## **TABLE OF CONTENTS**

2   ISSUES PRESENTED ........................................................................................................1

3   INTRODUCTION ...............................................................................................................1

4   FACTUAL BACKGROUND ...............................................................................................2

5        I.      Origination and Servicing of Plaintiffs' Mortgage ...............................................2

6        II.     Flood Insurance Requirements for Plaintiffs' Property ........................................2

7        III.    Wells Fargo Repeatedly Force-Places Backdated, Expired Flood Insurance

8                Coverage Through the QBE Defendants ...............................................................3

9   LEGAL STANDARD ..........................................................................................................4

10  ARGUMENT ......................................................................................................................5

11       I.      Plaintiffs Have Stated a Valid Breach of Contract Claim Against WFB ...............5

12               A.      WFB Exceeded Its Authority Under Paragraph 5 of the Mortgage ...........5

13               B.      WFB's Conduct Was Not "Reasonable or Appropriate" Under

14                       Paragraph 9 ..............................................................................................6

15                       1.      Plaintiffs Properly Allege that the Kickbacks Were Not Reasonable

16                               or Appropriate ...............................................................................7

17                       2.      Plaintiffs Properly Allege that Backdating Is Not Reasonable or

18                               Appropriate ...................................................................................8

19       II.     Plaintiffs Have Stated a Valid Claim Against WFB For Breach of the Implied

20               Covenant of Good Faith and Fair Dealing .........................................................11

21               A.      The Alleged Kickbacks Are Inconsistent with Good Faith and

22                       Fair Dealing ............................................................................................11

23               B.      Force-Placing Expired Coverage Is Inconsistent with Good Faith and Fair

24                       Dealing ...................................................................................................12

25       III.    Plaintiffs Have Stated a Valid UCL Claim Against Wells Fargo ........................13

26       IV.     Plaintiffs Have Stated a Valid Unjust Enrichment/Restitution Claim

27               Against WFI .......................................................................................................14

28       V.      Plaintiffs' Claims Are Not Preempted By Federal Law ......................................16

i

1

A.      Wells Fargo Analyzes the Wrong Federal Statute .................................17

2

B.      The NBA Does Not Preempt Plaintiffs' Claims ....................................18

3

C.      Plaintiffs' Claims Are Not Preempted by the HOLA ..............................21

4

VI.     Plaintiffs' Claims Are Not Barred by the Filed Rate Doctrine or the California

5

Insurance Code .........................................................................................23

6

VII.    Plaintiffs' Request For Exemplary Damages Is Valid .........................................25

7

CONCLUSION .........................................................................................................25

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO WELLS FARGO'S MOTION TO DISMISS, Case No. 4:13-cv-00708-JCS

1

## TABLE OF AUTHORITIES

2

<u>Cases</u>

3   *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273 (S.D. Fla. 2009) ................12, 23, 24

4   *Alexander v. Washington Mut., Inc.*, 2008 WL 2600323 (E.D. Pa. June 30, 2008) ....................24

5   *Alston v. Countrywide Finan. Corp.*, 585 F.3d 753 (3d Cir. 2009) ....................................24

6   *Am. Bankers Ins. Co. of Fla. v. Wells*, 819 So.2d 1196 (Miss. 2001) ...............................13

7   *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .........................................................4

8   *In re Atkinson*, 14 Fed. App'x 960 (9th Cir. 2001) ................................................14

9   *Avila v. Wells Fargo Bank, N.A.*, 2012 WL 2953117 (N.D. Cal. July 19, 2012) ...................17, 21

10  *Baladanzi v. WFC Holdings Corp.*, 2008 WL 4924987 (S.D.N.Y. Nov. 14, 2008) ....................19

11  *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194 (11th Cir. 2011) .........................21

12  *Barnett Bank of Marion County, N.A. v. Nelson Florida Insurance Commissioner*, 517 U.S. 25

13  (1996) .............................................................................................18

14  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................4

15  *Ben & Jerry's Franchising, Inc. v. Porghavami*, 418 Fed. App'x 607 (9th Cir. 2011) .............14

16  *Bertoli v. Wachovia Corp, FSB*, 2011 WL 5244687 (N.D. Cal. Nov. 3, 2011) .......................21

17  *Blaylock v. First Am. Title Ins. Co.*, 504 F. Supp. 2d 1091 (W.D. Wash. 2007) .................24

18  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) ...................................8

19  *Cannon v. Wells Fargo Bank, N.A.*, --- F. Supp. 2d ---, 2013 WL 132450

20  (N.D. Cal. Jan. 9, 2013) .....................................................................*passim*

21  *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342 (1992) .........11

22  *Casey v. Citibank, N.A.*, --- F. Supp. 2d ---, 2013 WL 11901 (N.D.N.Y. Jan. 2, 2013) .......14, 16

23  *Chavez v. Bank of Am. Corp.*, 2012 WL 1594272 (N.D. Cal. May 4, 2012) ..........................15

24  *Chavez v. Blue Sky Natural Beverage Co.*, 340 Fed. App'x. 359 (9th Cir. 2009) ..................5

25  *Concha v. London*, 62 F.3d 1493 (9th Cir. 1995) ..................................................8

26  *Dorr v. Yahoo! Inc.*, 2007 WL 2215445 (N.D. Cal. July 30, 2007) ................................15

27  *DSU Aviation, LLC v. PMCT Aviation, LLC*, 2007 WL 3456564 (N.D. Cal. Nov. 14, 2007) .......16

28  *Ellsworth v. U.S. Bank, N.A.*, --- F. Supp. 2d ---, 2012 WL 6176905

1     (N.D. Cal. Dec. 11, 2012) .................................................................... *passim*

2     *Gabana Gulf Distrib., Ltd. v. GAP Int'l Sales, Inc.*, 2008 WL 111223 (N.D. Cal. Jan. 9, 2009) ... 14

3     *Ghirardo v. Antonioli*, 14 Cal. 4th 39 (1996) ........................................................ 14

4     *Gibson v. World Sav. & Loan Ass'n*, 103 Cal. App. 4th 1291 (2002) ......................... 21, 22, 23

5     *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) .......................................... 4

6     *Gipson v. Fleet Mortg. Group, Inc.*, 232 F. Supp. 2d 691 (S.D. Miss. 2002) .................... 12, 24

7     *Gustafson v. BAC Home Loans Servicing, LP*, 2012 WL 4761733

8     (C.D. Cal. April 12, 2012) ................................................................. 5, 6, 11, 12

9     *Gustafson v. BAC Home Loans Servicing, LP*, 2012 WL 7071488 (C.D. Cal. Dec. 26, 2012) ...... 1

10    *Hightower v. Tilton*, 2012 WL 1194720 (E.D. Cal. Apr. 10, 2012) .................................. 8

11    *Hirsh v. Bank of Am.*, 107 Cal. App. 4th 708 (2003) ............................................... 14

12    *Hofstetter v. Chase Home Finance, LLC*, 751 F. Supp. 2d 1116 (N.D. Cal. 2010) ............. 2, 25

13    *Hofstetter v. Chase Home Finance, LLC*, 2011 WL 1225900 (N.D. Cal. July 20, 2011) .......... 13

14    *Jefferson v. Chase Home Fin.*, 2008 WL 1883484 (N.D. Cal. Apr. 29, 2008) ..................... 18

15    *Kay v. Wells Fargo & Co.*, 247 F.R.D. 572 (N.D. Cal. 2007) ..................................... 24

16    *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929 (C.D. Cal. 2012) ................... 8

17    *Keilholtz v. Superior Fireplace Co.*, 2009 WL 839076 (N.D. Cal. Mar. 30, 2009) ............ 15, 25

18    *Kunzelmann v. Wells Fargo Bank, N.A.*, 2012 WL 2003337

19    (S.D. Fla. June 4, 2012) ............................................................. 1, 17, 19, 23, 24

20    *Lane v. Wells Fargo Bank, N.A.*, 2013 WL 269133 (N.D. Cal. Jan. 24, 2013) ......... 2, 7, 14, 16, 19

21    *Lane v. Wells Fargo Bank, N.A.*, 2013 WL 1758878 (N.D. Cal. Apr. 24, 2013) ... 1, 8, 9, 10, 13, 14

22    *Lass v. Bank of America, N.A.*, 695 F.3d 129 (1st Cir. Sept. 21, 2012) ........................ *passim*

23    *Lectodryer v. SeoulBank*, 77 Cal. App. 4th 723 (2008) ............................................ 14

24    *Loe v. State Farm Ins. Companies*, 164 F.3d 630, 1998 WL 690923 (9th Cir. Sept. 25, 1998) ... 23

25    *Losel v. Chase Bank, N.A.*, 2012 WL 3778960 (E.D. Cal. Aug. 31, 2012) ....................... 19

26    *MacKay v. Superior Court*, 188 Cal. App. 4th 1427 (2010) ....................................... 24

27    *Martinez v. Wells Fargo Home Mortgage, Inc.*, 598 F.3d 549 (9th Cir. 2010) .................... 20

28    *McLaughlin v. Nat'l Union Fire Ins. Co.*, 23 Cal. App. 4th 1132 (1994) ........................ 25

-iv-

1   *McNeary-Calloway v. JPMorgan Chase Bank, N.A.*, 863 F. Supp. 2d 928 (N.D. Cal. 2012) *passim*

2   *Morris v. Wells Fargo Bank, N.A.*, 2012 WL 3929805 (W.D. Pa. Sept. 7, 2012) .......................... 16

3   *Munoz v. PHH Corp.*, 659 F. Supp. 2d 1094 (E.D. Cal. 2009) .......................... 24

4   *Nordberg v. Trilegant Corp.*, 445 F. Supp. 2d 1082 (N.D. Cal. 2006) .......................... 15

5   *In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*, 491 F.3d 638 (7th Cir. 2007) ............ 22

6   *Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913 (1985) .......................... 11

7   *Ramirez v. Wells Fargo Bank, N.A.*, 2011 WL 1585075 (N.D. Cal. Apr. 27, 2011) .................... 17

8   *Robinson v. Fountainhead Title Group Corp.*, 447 F. Supp. 2d 478 (D. Md. 2006) ................... 24

9   *Rodriguez v. U.S. Bank, N.A.*, 2012 WL 1996929 (N.D. Cal. June 4, 2012) .................... 17, 18

10  *Rose v. Bank of Am. Corp.*, 2010 WL 8435397 (C.D. Cal. Nov. 5, 2010) .......................... 21

11  *Roussel v. Wells Fargo Bank*, 2012 WL 5301909 (N.D. Cal. Oct. 25, 2012) .......................... 21

12  *Rush v. Nutrex Research, Inc.*, 2012 WL 2196144 (N.D. Cal. June 13, 2012) .......................... 15

13  *Scott v. Wells Fargo Bank, N.A.*, 2011 WL 3837077 (D. Minn. Aug. 29, 2011) .......................... 17

14  *Schilke v. Wachovia Mortg., FSB*, 820 F. Supp. 2d 825 (N.D. Ill. 2011) .......................... 22

15  *Selman v. CitiMortgage*, 2013 WL 838193 (S.D. Ala. Mar. 5, 2013) .......................... 21

16  *Shum v. Intel Corp.*, 499 F.3d 1272 (Fed. Cir. 2007) .......................... 15

17  *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463 (2005) .......................... 14

18  *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533 (N.D. Cal. 2012) .......................... 18

19  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4345435 (N.D. Cal. Sept. 15, 2011) ....... 15

20  *Trinity Hotel Investors, LLC v. Sunstone OP Props., LLC*, 2009 WL 303330 (C.D. Cal. Feb. 6,

21  2009) .......................... 11

22  *Ulbrich v. GMAC Mortgage, LLC*, 2012 WL 3516499 (S.D. Fla. Aug. 15, 2012) .................... 14

23  *Valtierra v. Wells Fargo Bank, N.A.*, 2011 WL 590596 (E.D. Cal. Feb. 10, 2011) .................... 17

24  *Wahl v. Am. Sec. Ins. Co.*, 2010 WL 1881126 (N.D. Cal. May 10, 2010) .......................... 13

25  *Wahl v. Am. Sec. Ins. Co.*, 2010 WL 4509814 (N.D. Cal. Nov. 1, 2010) .................... 2, 23, 24

26  *Ward v. Taggart*, 51 Cal. 2d 736 (1959) .......................... 2, 14, 25

27  *Western Pac. R. Corp. v. Western Pac. R. Co.*, 206 F.2d 495 (9th Cir. 1953) .................... 14

28  *Williams v. Wells Fargo Bank, N.A.*, 2011 WL 4368980 (S.D. Fla. 2011) .................... 14, 16

-v-

*Williams v. Wells Fargo Bank, N.A.*, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ............... *passim*

*Wyler Summit P'ship v. Turner Broad. System, Inc.*, 135 F.3d 658 (9th Cir. 1998) ...................... 4

Statutes and Rules

12 C.F.R. § 7.4002 ........................................................................................................... 18

12 C.F.R. § 34.4 ............................................................................................... 18, 19, 20

12 C.F.R. § 560.2 ................................................................................................. 21, 22

42 U.S.C. § 4012a(b) ........................................................................................... 2, 9

42 U.S.C. § 4012a(e) ....................................................................................... 7, 9, 11

Cal. Bus. & Prof. Code § 17200 *et seq.* ........................................................ 1, 13, 14

Cal. Civ. Code § 3294 .............................................................................................. 25

Cal. Ins. Code § 1858.3 ........................................................................................... 23

Cal. Ins. Code § 1861.03 ................................................................................... 23, 24

Fed. R. Civ. P. 8(a) ................................................................................................... 4

Other Authority

H.R. Rep. 112-102, 2011 WL 2284729 (June 9, 2011) ........................................... 10

*Lender Placed Insurance, Terms and Conditions*, Federal Housing Finance Agency, 78 Fed. Reg. 19263 ........................................................................................................ 12

*Loans in Areas Having Special Flood Hazards; Interagency Questions and Answers Regarding Flood Insurance*, Office of the Comptroller of Currency, 74 Fed. Reg. 35,914 (July 21, 2009) .................................................................................................. 9, 20, 22

*Loans in Areas Having Special Flood Hazards; Interagency Questions and Answers Regarding Flood Insurance*, Office of the Comptroller of Currency, 76 Fed. Reg. 64,175 (Oct. 17, 2011) ..... 9

*Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act*, Consumer Financial Protection Bureau, 78 Fed. Reg. 10696-01, 2013 WL 525347 (Feb. 14, 2013) ....................... 11

OCC Advisory Letter, Guidance on Unfair or Deceptive Acts or Practices, AL 2002-3, 2002 WL 521380 (Mar. 22, 2002) ....................................................................................... 20

OTS Letter P-96-14, 1996 WL 767462 (Dec. 24, 1996) ........................................... 22

OTS Letter P-99-3, 1999 WL 413698 (Mar. 10, 1999) ............................................. 22

**ISSUES PRESENTED**

1.     Have Plaintiffs stated valid claims against Wells Fargo Bank, N.A. ("WFB") and Wells Fargo Insurance, Inc. ("WFI") for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) unjust enrichment/restitution, and (4) unfair business practices under Cal. Bus. & Prof. Code § 17200 *et seq.*, based on allegations of improper kickbacks and backdating in connection with force-placed insurance?[1]

2.     Are Plaintiffs' claims preempted by federal law or the filed-rate doctrine?

3.     Do Plaintiffs properly request exemplary damages in connection with their unjust enrichment claim against WFI?

**INTRODUCTION**

Wells Fargo has no legitimate basis for seeking to dismiss Plaintiffs' claims.  The same claims, asserted by borrowers with the same type of mortgage, based on the same type of alleged misconduct, repeatedly have been allowed to proceed past motions to dismiss.  *See, e.g., Ellsworth v. U.S. Bank, N.A.,* -- F.Supp.2d --, 2012 WL 6176905 (N.D. Cal. Dec. 11, 2012) (upholding claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment/restitution, and unfair business practices, based on allegations of improper kickbacks and backdating in connection with force-placed insurance); *McNeary-Calloway v. JP Morgan Chase Bank, N.A.,* 863 F. Supp. 2d 928 (N.D. Cal. 2012) ("*McNeary*") (Spero, J.) (same).[2]  Moreover, Wells Fargo's purported preemption "defenses" under federal law and the filed-rate doctrine have been rejected multiple times.  *See Cannon v. Wells Fargo Bank, N.A.,* -- F. Supp. 2d --, 2013 WL 132450, at *20-*21 (N.D. Cal. Jan. 9, 2013) (finding backdating and kickback claims not preempted by federal banking law or the filed-rate doctrine); *Ellsworth*, 2012

---

[1] Plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing are asserted exclusively against WFB.  Plaintiffs' claim for unjust enrichment/restitution is asserted exclusively against WFI.  Plaintiffs' claim for unfair business practices is asserted against both WFB and WFI (collectively referred to herein as "Wells Fargo").

[2] *Accord*, *e.g., Lass v. Bank of Am., N.A.,* 695 F.3d 129 (1st Cir. Sept. 21, 2012); *Lane v. Wells Fargo Bank, N.A.,* 2013 WL 1758878 (N.D. Cal. Apr. 24, 2013) ("*Lane II*"); *Gustafson v. BAC Home Loans Servicing, LP,* 2012 WL 7071488 (C.D. Cal. Dec. 26, 2012) ("*Gustafson II*"); *Williams v. Wells Fargo Bank, N.A.,* 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ("*Williams II*").  Similar kickback claims are also proceeding in a related case against Wells Fargo before this Court, *McKenzie v. Wells Fargo Home Mortgage, Inc.*, No. 3:11-cv-04965-JCS (N.D. Cal.).

PLAINTIFFS' OPPOSITION TO WELLS FARGO'S MOTION TO DISMISS, Case No. 4:13-cv-00708-JCS

WL 6176905, at *12-14 (same); *Kunzelmann v. Wells Fargo Bank, N.A.*, 2012 WL 2003337, at **2-3, 5 (S.D. Fla. June 4, 2012) (same).[3]  Finally, Plaintiffs are entitled to seek exemplary damages in connection with their claim against WFI for unjust enrichment/restitution, *see Ward v. Taggart*, 51 Cal. 2d 736, 743 (1959), and Wells Fargo's motion to strike this request is premature at best.  *See Hofstetter v. Chase Home Fin., LLC*, 751 F. Supp. 2d 1116, 1131 (N.D. Cal. 2010) ("*Hofstetter I*").  Accordingly, Plaintiffs request that the Court deny Wells Fargo's motion.

## FACTUAL BACKGROUND

### I.   Origination and Servicing of Plaintiffs' Mortgage

On December 15, 2008, Plaintiffs obtained a mortgage loan from Wachovia Mortgage, FSB ("Wachovia") in the amount of $417,000, secured by a deed of trust ("Mortgage") on their homestead in San Mateo, California.  *Complaint, ¶ 17.*  On or about December 31, 2008, WFB acquired Wachovia, and is the current lender-in-interest to Plaintiffs' mortgage loan.  *Id. ¶ 18.*  WFB also services the loan through its Wells Fargo Home Mortgage division.  *Id.*

### II.   Flood Insurance Requirements for Plaintiffs' Property

Paragraph 5 of the Mortgage requires Plaintiffs to maintain flood insurance on their property "in the amounts … and for the periods that Lender requires."  *Complaint, Ex. 1 at ¶ 5.*[4]  In the event that the required amount of coverage is not maintained, the same Paragraph of the Mortgage allows the lender to force place flood insurance on Plaintiffs' property.  *Complaint, ¶ 21 & Ex. 1, ¶ 5.*  However, the Mortgage does not authorize the lender to purchase backdated flood insurance, and does not authorize the lender to unjustly and unlawfully enrich itself by accepting kickbacks or commissions (either directly or through its affiliates) in connection with

---

[3] *Accord*, *Lane v. Wells Fargo Bank, N.A.*, 2013 WL 269133, at *14 (N.D. Cal. Jan. 24, 2013) ("*Lane I*"); *Williams II*, 2011 WL 4901346, at *7-11; *Wahl v. Am. Sec. Ins. Co.*, 2010 WL 4509814, at *2-3 (N.D. Cal. Nov. 1, 2010) (*"Wahl II"*).

[4] Under the National Flood Insurance Act ("NFIA"), lenders are required to ensure that any improved property located in a Special Flood Hazard Area ("SFHA") that secures a loan or line of credit is covered by flood insurance in an amount at least equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the Act ($250,000), whichever is less.  *Complaint ¶ 19* (citing 42 U.S.C. § 4012a(b)(1)).  WFB has a more onerous flood insurance coverage requirement that requires borrowers in SFHAs to maintain flood insurance coverage equal to the full replacement cost value of their property up to $250,000, without regard to the amount of the unpaid principal balance. *See Complaint, Ex. 2 at p.1.*

force-placed coverage. *Id.* To the contrary, the Mortgage provides that: (1) Lender may only "do and pay for whatever is reasonable and appropriate" to protect its interest in the property; (2) "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law"; and (3) "All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law." *Id. ¶ 21 & Ex. 1, ¶¶ 9, 14, 16.*

From the time that Plaintiffs originated their mortgage loan until October 16, 2012, their property was located in a SFHA, and they were required to maintain flood insurance on their property. *Id. ¶ 22.*[5] During this period, Plaintiffs continuously maintained $250,000 worth of flood insurance on their property, in full satisfaction of WFB's coverage requirement, and listed WFB (or its predecessor Wachovia) as an insured mortgagee under their policies. *Id. ¶ 23.* At all times, WFB had notice of this flood insurance coverage. *Id. ¶ 24.*

## III. Wells Fargo Repeatedly Force-Places Backdated, Expired Flood Insurance Coverage Through the QBE Defendants

In spite of this existing flood insurance coverage, WFB sent Plaintiffs a form letter ("Binder Letter") on January 30, 2012, claiming that "you do not have [flood] insurance[.]" *Id. ¶ 24 & Ex. 2.* In this Binder Letter, WFB also advised Plaintiffs that it had force-placed flood insurance coverage on their property through QBE Insurance Corporation ("QBEC"), for a 90-day period beginning on December 12, 2009 – ***more than two years <u>before</u> the date of the notice***.

On March 6, 2012, WFB sent Plaintiffs another form letter ("First Policy Letter"), indicating that WFB had purchased a one-year flood insurance policy through QBEC, for the period from December 12, 2009 to December 12, 2010. *Id. ¶ 25 & Ex. 3.* This policy was backdated more than two years and expired more than a year before it was purchased. *Id.* The premium charged to Plaintiffs for this expired coverage was $2,250. *Id. ¶ 26.*

The very next day, on March 7, 2012, WFB sent Plaintiffs yet another form letter ("Expiration Letter"), claiming that their flood insurance had expired on December 12, 2010, and threatened to force-place another policy. *Id. ¶ 27.* Then, on April 6, 2012, WFB sent Plaintiffs a

---

[5] On October 16, 2012, the Federal Emergency Management Agency ("FEMA") implemented a revised map for the San Mateo area. *Complaint ¶ 22.* The revised map designated Plaintiffs' property as not being in a SFHA. *Id.* Consequently, flood insurance is no longer required. *Id.*

Second Policy Letter, indicating that WFB had purchased another backdated (and expired) flood insurance policy from QBEC, for the period from December 12, 2010 to December 12, 2011. *Id. ¶ 28.* The premium charged to Plaintiffs for this expired coverage was $2,375. *Id. ¶ 29.*

The coverage that WFB purchased was completely worthless to Plaintiffs, as they suffered no flood losses and had no flood-related claims during the expired coverage periods. *Id., ¶ 24-25, 28.* However, it was highly profitable to Defendants. In a cascading flow of so-called "commissions," (1) QBEC paid approximately 40% of the net written premiums on each policy to its affiliate, QBE First Insurance Agency ("QBEF"); (2) QBEF paid 11% of the net written premiums to WFI; and (3) WFI passed back a substantial portion of this commission to WFB through Wells Fargo's "soft dollars" program. *Complaint, ¶¶ 45-46.*

Plaintiffs repeatedly objected to WFB's force-placed coverage and provided WFB with evidence of flood insurance coverage for their property. *Id. ¶¶ 30-33, 35-36 & Exs. 7-8, 10, 12.* In response, two WFB customer service representatives confirmed that WFB had proof of insurance for Plaintiffs' property. *Id. ¶¶ 31, 33.* However, WFB has only refunded the charges for the first policy, and has never refunded the charges for the second policy. *Id. ¶ 34.*

## **LEGAL STANDARD**

Rule 8(a)(2) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy this standard, it is not necessary to plead "detailed factual allegations;" all that is required is that the complaint contain sufficient factual content that, when accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard is not akin to a "probability requirement." *Id.* Indeed, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008). At this stage of the proceedings, the Court must construe the Complaint in the light most favorable to Plaintiffs, accept all factual allegations as true, and draw all reasonable inferences in Plaintiffs' favor. *Wyler Summit P'ship v. Turner Broad. System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). A motion to dismiss "is not a procedure for resolving a

-4-

1    contest between the parties about the facts or the substantive merits of the plaintiff's case."

2    *Chavez v. Blue Sky Natural Beverage Co.*, 340 Fed. App'x. 359, 360 (9th Cir. 2009).

3                                          **ARGUMENT**

4    **I.      Plaintiffs Have Stated a Valid Breach of Contract Claim Against WFB**

5            Plaintiffs have stated a valid breach of contract claim against WFB.   The relevant

6    provisions of Plaintiffs' Mortgage contain language that is ***identical*** or ***nearly identical*** to the

7    language that was found sufficient to support a claim for breach of contract in *McNeary*,

8    *Ellsworth*, and other cases, based on similar allegations of kickbacks and backdating in

9    connection with force-placed insurance.   *See, e.g., McNeary*, 863 F. Supp. 2d at 955-56;

10   *Ellsworth,* 2012 WL 6176905, at *15-*16.  The same result should apply here.

11          **A.      WFB Exceeded Its Authority Under Paragraph 5 of the Mortgage**

12           Paragraph 5 of Plaintiffs' Mortgage provides, in relevant part, as follows:

13           Borrower shall keep the improvements now existing or hereafter erected on the
14           Property insured against loss by fire, hazards included within the term 'extended
             coverage,' and any other hazards including, but not limited to, earthquakes and
15           floods, for which Lender requires insurance.  This insurance shall be maintained in
             the amounts (including deductible levels) and for the periods that Lender requires.
16                                              * * *
             If Borrower fails to maintain any of the coverages described above, Lender may
17           obtain insurance coverage, at Lender's option and Borrower's expense.

18   *Complaint Ex. 1 at ¶ 5*; *cf. McNeary*, 863 F. Supp. 2d at 955 (quoting identical language);

19   *Ellsworth,* 2012 WL 6176905, at *15 (same).   Although this language affords the lender

20   discretion to compel borrowers to maintain hazard and flood insurance, in particular amounts, for

21   certain periods of time, this discretion is "not unlimited."  *McNeary*, 863 F. Supp. 2d at 955-56;

22   *accord*, *Gustafson v. BAC Home Loans Servicing*, 2012 WL 4761733, at *4 (C.D. Cal. April 12,

23   2012) ("*Gustafson I*") ("While the Insurance Provision afforded the Bank [] discretion to force-

24   place insurance on Plaintiff's Property, it did not unambiguously permit the Bank [] to do so in the

25   manner alleged by Plaintiff.").  "Nothing in the contract necessarily authorizes charges regardless

26   of amount and regardless of whether [the lender] receives a portion of the premiums."  *Id.* at 956;

27   *accord*, *Ellsworth,* 2012 WL 6176905, at *16; *Lass*, 695 F.3d at 140 ("The mortgage … does not

28   explicitly address either commissions or, more generally, the Bank's entitlement to profit from its

                                              -5-

forced placement of insurance."). Likewise, this contract language does not "authorize backdating FPI [force-placed insurance] policies to cover periods of time where no loss occurred." *McNeary*, 863 F. Supp. 2d at 956; *accord*, *Ellsworth*, 2012 WL 6176905, at *16 (same). Thus, Wells Fargo is wrong to assert that "[t]he deed of trust authorizes the LPI practices that Plaintiffs challenge." *Wells Fargo Memo at 15.* Contrary to Wells Fargo's assertions, Plaintiffs have stated a valid claim that WFB breached Plaintiffs' Mortgage by exceeding its authority under Paragraph 5. *See McNeary*, 863 F. Supp. 2d at 956 ("Because the Court cannot say that the contracts' terms unambiguously authorize Defendants' alleged behavior, the Court denies Defendants' motion to dismiss the … breach of contract claim."); *Ellsworth*, 2012 WL 6176905, at *16 (agreeing with Court's analysis in *McNeary*); *Gustafson I*, 2012 WL 4761733, at *4 ("These allegations are sufficient to state a claim for breach of contract at this stage of the proceedings.").[6]

**B.   WFB's Conduct Was Not "Reasonable or Appropriate" Under Paragraph 9**

Moreover, Paragraph 9 expressly provides that WFB may only "do and pay for whatever is reasonable and appropriate to protect Lender's Interest in the Property and rights under [the] Security Instrument[.]" *See Complaint, ¶ 21 & Ex. 1 at ¶ 9.* In *McNeary*, the Court interpreted almost identical contract language,[7] and held that it "could be interpreted as explicitly restricting the lender's discretion in force-placing insurance." *McNeary*, 863 F. Supp. 2d at 956.

---

[6] This Court should reject Wells Fargo's argument (*Wells Fargo Memo at 15*) that the relevant question is not whether the contract authorized WFB's actions, but whether its actions were expressly prohibited by the contract. *See Ellsworth*, 2012 WL 6176905, at *16 n.12 (rejecting bank's argument that "*McNeary-Calloway* applies an incorrect rationale because, according to [the] Bank, 'where a plaintiff pleads breach of contract, the question is not whether the contract 'authorized' the defendant's action, but instead whether any term of the contract *prohibited it.*") (italics in original). Wells Fargo's analysis is upside down, as it had no right to force-place coverage unless such coverage was authorized under the Mortgage. Thus, to the extent that WFB's actions in force-placing coverage were not authorized by Paragraph 5, it "breached the express Insurance Provision in the Mortgage Agreement by force-placing insurance beyond the scope of coverage authorized thereunder." *Gustafson I*, 2012 WL 4761733, at *3.

[7] The provision in *McNeary* provided: "If Borrower ... fails to perform any [ ] covenants and agreements contained in this Security Instrument ... then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property[.]" *McNeary*, 863 F. Supp. 2d at 956.

-6-

Specifically, the Court found that "[t]his language provides a basis for the claim that Defendants may force-place insurance only to the extent that such insurance is necessary to protect the property's value and [the lender's] rights in the property." *Id.* (internal quotation marks omitted); *accord*, *Lane I*, 2013 WL 269133, at *10 ("[U]nder [Paragraph 9 of] the mortgage agreement, the lender's discretion is limited to doing that which is 'reasonable or appropriate' to protect its interest in the property."); *Ellsworth,* 2012 WL 6176905, at *15 (finding that "Paragraph 9 requires reasonableness and appropriateness"). Here, the alleged kickbacks obviously were not reasonable, appropriate, or necessary. *See infra* at 7-8. Moreover, as this Court found in *McNeary*, the alleged backdating practice was "disadvantageous to Plaintiffs and unsupported by any apparent reason other than the fact that Defendants stood to benefit financially from the high-priced, backdated policy." *McNeary*, 863 F. Supp. 2d at 962. Thus, Plaintiffs also properly allege that WFB breached Paragraph 9 of the Mortgage. *See Complaint, ¶ 21*; *accord*, *McNeary*, 863 F. Supp. 2d at 956; *Ellsworth,* 2012 WL 6176905, at *16; *Lane I*, 2013 WL 269133, at *10; *see also Lass*, 695 F.3d at 140-41 ("[The Mortgage] states only that 'the Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights.' … [Plaintiff] may be able to challenge the payment of commissions to a Bank subsidiary as unnecessary and thus a breach of [the Mortgage].").[8]

### 1.   Plaintiffs Properly Allege that the Kickbacks Were Not Reasonable or Appropriate

Notably, Wells Fargo offers no justification for the alleged kickbacks. Instead, it argues that the kickback claim is "insufficiently pled." *See Wells Fargo Memo at 8.* This argument is ludicrous in light of the detailed allegations in Plaintiffs' Complaint, which include: (1) the

---

[8]  Plaintiffs also properly claim that the alleged kickbacks and backdated coverage violate Paragraphs 14 and 16 of the Mortgage because they are inconsistent with "Applicable Law." *See Complaint, ¶ 21 & Ex. 1 at ¶¶ 14, 16.* Under the NFIA, the lender is only authorized to "charge the borrower for the cost of premiums and fees *incurred* by the lender ... in purchasing the [force-placed] insurance." *Lass*, 695 F.3d at 141 n.20 (emphasis added) (citing 42 U.S.C. § 4012a(e)(2)). The First Circuit has stated that "[w]e do not read this authorization for 'fees' … as necessarily authorizing 'commissions' paid to a Bank subsidiary." *Lass*, 695 F.3d at 141 n.20. Moreover, purchasing backdated coverage for periods that predate notice to the borrower of a deficiency in coverage violates the advance notice requirements of the NFIA. *See infra* at 9-10.

-7-

1    specific amount of the commission paid to WFI (11%) by the QBE Defendants; (2) the program

2    name under which commissions are "passed back" from WFI to WFB ("soft dollars program");

3    (3) the report that reflects these payments ("Profitability Passback Report"); and (4) a chart

4    depicting the money flow.  *Complaint, ¶¶ 45-46 & Ex. 14*.  Moreover, Plaintiffs cited extensive

5    statutory and regulatory authority supporting their claim that these types of kickbacks are not

6    reasonable or appropriate, and expressing concern about "large commissions being paid by

7    insurers to the banks for what appears to be very little work[.]"  *See Complaint, ¶¶ 51-56 & Exs.*

8    *15-20.*

9           In *Ellsworth*, the Court rejected the bank's argument that the plaintiff's kickback claims

10   were not pled in sufficient detail.  *See Ellsworth*, 2012 WL 6176905, at *14-15.  As the Court

11   noted in *Ellsworth*, "[t]he weight of authority holds similar allegations to be sufficient."  *Id.* at

12   *14 (citing *McNeary*, 863 F. Supp. 2d at 956; *Williams II*, 2011 WL 4901346).  Here, it is evident

13   from the various complaints in each case that the allegations in Plaintiffs' Complaint are the most

14   specific and most detailed of those in any complaint filed to date.  Given that no discovery has yet

15   taken place, it is "perverse" for Wells Fargo to argue that further specificity is required at this

16   stage.  *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 600-602 (8th Cir. 2009) ("It

17   would be perverse to require plaintiffs bringing prohibited [kickback] transaction claims to plead

18   facts that remain in the sole control of the parties who stand accused of wrongdoing").[9]

19          **2.     Plaintiffs Properly Allege that Backdating Is Not Reasonable or**
20                  **Appropriate**

21          Although Wells Fargo attempts to argue that backdating force-placed policies is

22   reasonable and appropriate, *see Wells Fargo Memo at 5-8*, its arguments were rejected in *Lane*.

23   *See Lane II*, 2013 WL 1758878, at *2 ("Defendant contends that because federal law allegedly

24   permits backdating of flood insurance policies to ensure continuous coverage and because

25   plaintiffs' mortgages allegedly permit backdating, plaintiffs have failed to state a cognizable legal

26   _____

27   [9] *Accord*, *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) (relaxing pleading requirements
     where operative facts were "in the exclusive possession" of the wrongdoer); *Hightower v. Tilton*,
     2012 WL 1194720, at *3-5 (E.D. Cal. Apr. 10, 2012); *Keegan v. Am. Honda Motor Co., Inc.*, 838
28   F. Supp. 2d 929, 961 n.85 (C.D. Cal. 2012).

-8-

claim. Neither of these arguments is persuasive.") (internal citation omitted). This Court also should reject Wells Fargo's arguments here, especially since Plaintiffs' force-placed policies were fully expired at the time they were issued, provided no benefit to Plaintiffs, and were duplicative of Plaintiffs' existing coverage.

Wells Fargo cannot rely on federal flood insurance requirements to justify its backdating practice. *See Wells Fargo Memo at 7* (citing 42 U.S.C § 4012a(b)(1)(A)). "While the statute suggests that continuous coverage was necessary, the plain language of the statute did not *require* backdating force-placed insurance and charging borrowers the increased cost." *Lane II*, 2013 WL 1758878, at *2 (emphasis in original); *accord*, *Ellsworth*, 2012 WL 6176905, at *12 & *21 n.13. To the contrary, the statute has always required that 45-days notice be given to borrowers before force-placing coverage. *See* 42 U.S.C. § 4012a(e). Regardless of whether it is appropriate to charge borrowers for coverage during this 45-day notice period,[10] it is not reasonable and appropriate to charge borrowers for coverage *before* a notice of a deficiency was ever provided. *See Lass*, 695 F.3d at 139 (expressing doubt about "the propriety of procuring a policy back-dated to *before* notice was given"); *Ellsworth*, 2012 WL 6176905, at *12 (rejecting bank's argument that federal law requires retroactive force-placement of flood insurance to the date of lapse, finding that the coverage requirement "more arguably is prospective" and begins "no earlier than when the bank determines there is inadequate flood insurance [i.e., when notice is given] and

_____

[10] There has been considerable debate regarding whether lenders may charge borrowers for coverage during the 45-day period. *See Lass*, 695 F.3d at 139 ("whether a lender may purchase force-placed insurance coverage during the 45–day notice period required by the NFIA is a debatable question"). On July 21, 2009, the Office of the Comptroller of Currency ("OCC") and other federal regulators issued a set of Interagency Questions and Answers Regarding Flood Insurance, which explicitly stated that "lenders may not charge borrowers for coverage during the 45-day notice period." 74 Fed. Reg. 35,914, at 35,934 (July 21, 2009). On October 17, 2011, after extensive lobbying from the banking industry, the OCC modified its position, and suggested that lenders may charge borrowers for flood insurance coverage during the 45-day notice period, if the borrower has given the lender "express authority" to do so. *See Loans in Areas Having Special Flood Hazards; Interagency Questions & Answers Regarding Flood Insurance*, 76 Fed. Reg. 64,175, at 64,180-81 (Oct. 17, 2011). No such express authority was given here. *See Lane II*, 2013 WL 1758878, at *2 ("[D]efendant's alleged practice did not appear to comply with these requirements because plaintiffs' mortgages did not expressly permit charging for backdated flood insurance.").

1   more likely from the end of the 45-day notice period."); *id.* at *21 (agreeing that "retroactively

2   placing flood insurance policies is [] inconsistent with the requirements of the NFIA").[11]

3        Wells Fargo's reliance on the Biggert-Waters Flood Insurance Reform Act is misplaced.

4   *See Wells Fargo Memo at 6 & n.8.*  Biggert-Waters did not become effective until January 1,

5   2013, and was "not in effect at the time of the alleged backdating."  *Lane II*, 2013 WL 1758878,

6   at *3.  Although Wells Fargo argues that Biggert-Waters merely clarified existing law, the House

7   Report upon which it relies does not support its position for multiple reasons.  First, "[t]he House

8   Report [] was part of a different bill that never passed the Senate and never became law; it

9   therefore has little persuasive value in interpreting the law that Congress did, in fact, enact."  *Id*.

10  Second, Wells Fargo has selectively quoted the House Report in a misleading manner.  When

11  read in full, the House Report makes clear that Congress never intended to allow lenders to force-

12  place coverage prior to the date of notice:

13          Additionally, this section clarifies and codifies longstanding practices that allow
            lenders and servicers to collect premiums and fees incurred for coverage beginning
14          on the date an existing flood insurance policy lapsed or did not provide sufficient
            coverage.  In this circumstance, the lender can collect fees and premiums for
15          "force-placed" insurance ***during the 45-day notification period.***

16  H.R. Rep. 112-102, at 39, 2011 WL 2284729 (June 9, 2011) (emphasis added).  Finally, there

17  never was a lapse in Plaintiffs' coverage; they continually maintained flood insurance coverage

18  on their property at all relevant times.  *See Complaint, ¶ 23*.  Simply put, it was not reasonable or

19  appropriate for Wells Fargo to force place two fully expired policies on Plaintiffs' property for

20  coverage periods that that predated any notice of a purported "deficiency" in coverage that did not

21  exist in the first place, and nothing in Biggert-Waters changes that fact.[12]

22

23  [11]  Moreover, even Wells Fargo appears to concede that it is not appropriate to force-place
    coverage where borrowers like Plaintiffs already maintain coverage on their property.  *See Wells*
24  *Fargo Memo at 3.*

    [12]  Wells Fargo's citation to Consumer Financial Protection Bureau ("CFPB") regulations is even
25  further afield.  *See Wells Fargo Memo at 6 n.9.*  The cited regulations (1) do not apply to flood
    insurance; (2) were issued in connection with a different statute (the Real Estate Settlement
26  Procedures Act); (3) were published after the period in question; and (4) will not become
    effective until 2014.  Moreover, Wells Fargo also is selectively quoting these regulations, which
27  impose a 45-day notice period before force-placing hazard insurance coverage, and make clear
    that the CFPB is ***not*** contemplating backdating of policies prior to the date of notice.  *See*
28
                                        -10-

## II.  Plaintiffs Have Stated a Valid Claim Against WFB For Breach of the Implied Covenant of Good Faith and Fair Dealing

Even if WFB's discretion was not limited by the express language of the Mortgage, it is clearly limited by operation of law.  "In every contract, the law implies a covenant of good faith and fair dealing." *Trinity Hotel Investors, LLC v. Sunstone OP Props., LLC*, 2009 WL 303330, at *11 (C.D. Cal. Feb. 6, 2009).[13]  Thus, "where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." *Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 923 (1985).  Based on Plaintiffs' allegations of improper kickbacks and backdating, it is clear that Plaintiffs have asserted a valid claim for breach of the implied covenant in this case.  *See, e.g., Lass*, 695 F.3d at 137-140; *Ellsworth*, 2012 WL 6176905, at *16-18; *McNeary*, 863 F. Supp. 2d at 956-59; *Gustafson I*, 2012 WL 4761733, at *4.

### A.  The Alleged Kickbacks Are Inconsistent with Good Faith and Fair Dealing

The alleged kickbacks are plainly inconsistent with good faith and fair dealing.  As noted in Plaintiffs' Complaint, these types of kickbacks are:

- Not authorized by the National Flood Insurance Act ("NFIA"), *see Lass*, 695 F.3d at 141 n.20 ("The NFIA states that the lender 'may charge the borrower for the cost of premiums and fees incurred by the lender ... in purchasing the [force-placed] insurance.'  We do not read this authorization for 'fees' – presumably paid to third parties – as necessarily authorizing 'commissions' paid to a Bank subsidiary.") (citing 42 U.S.C. § 4012a(e)(2));

- Prohibited by Fannie Mae Guidelines, *see Complaint, ¶ 52 & Ex. 15* (stating that "reimbursement of lender-placed insurance premiums must exclude any lender-placed insurance commission earned on that policy by the servicer or any related entity"); and

- Inconsistent with pronouncements by the U.S. Department of Housing and Urban Development ("HUD"), California Department of Insurance, New York Department of Financial Services, and National Association of Insurance Commissioners, *see id., ¶ 52 n.9 & ¶¶ 54-56 & Exs.17-20.*

---

*Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act*, 78 Fed. Reg. 10696-01, at 10767, 2013 WL 525347 (Feb. 14, 2013) ("[T]he Bureau is interpreting the statutory language to allow charges to be assessed retroactively for any period in which coverage was not maintained continuously *once the procedural and substantive statutory criteria are met*.") (emphasis added).  Wells Fargo has replaced the emphasized language with ellipses.

[13] A breach of a specific contractual provision is not a prerequisite to establishing a breach of the implied covenant.  *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 373 (1992).

-11-

Moreover, the chorus of disapproval has only grown stronger since Plaintiffs filed their Complaint.[14]

Consistent with the above authority, numerous courts (including this Court) have held that allegations of kickbacks or other self-dealing in connection with force-placed insurance are sufficient to state a claim for breach of the covenant of good faith and fair dealing. *See, e.g., Lass*, 695 F.3d at 140; *Ellsworth,* 2012 WL 6176905, at \*17-18; *McNeary,* 863 F. Supp. 2d at 957-58; *Gustafson I,* 2012 WL 4761733, at \*4; *Williams II*, 2011 WL 4901346, at \*2-\*4; *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1276, 1278–79 (S.D. Fla. 2009); *Gipson v. Fleet Mortg. Group, Inc.*, 232 F. Supp. 2d 691, 705-707 (S.D. Miss. 2002). There is no reason for the Court to reach a different result.

### B. Force-Placing Expired Coverage Is Inconsistent with Good Faith and Fair Dealing

Backdating flood insurance is also inconsistent with good faith and fair dealing. WFB had no legitimate reason to purchase backdated flood insurance coverage to protect against a flood loss that never occurred for a time period that had already passed. This practice is "unsupported by any apparent reason other than the fact that Defendants stood to benefit financially from the high-priced, backdated policy." *See McNeary*, 863 F. Supp. 2d at 962. As noted above, this

---

[14] On March 29, 2013, the Federal Housing Finance Agency ("FHFA") published a Notice in the Federal Register indicating that it intends to ban such commission arrangements in connection with force-placed insurance for borrowers with mortgages owned by Fannie Mae and Freddie Mac. *See FHFA, Lender Placed Insurance, Terms and Conditions*, 78 Fed. Reg. 19263, 19264. In addition, the New York Department of Financial Services ("NYDFS") entered into a Consent Order with QBEC on April 18, 2013, which provides that QBEC and any subsidiary or affiliate of QBEC, including QBEF, "shall not pay commissions to a servicer or a person or entity affiliated with a servicer on force-placed insurance policies obtained by the servicer." *Exhibit A at p.11, ¶ 17.* The Consent Order further states:

> ***The evidence from the Investigation indicates that the affiliated agencies and brokers do little or no work for the commissions QBE has paid them...*** Commissions paid to affiliates of servicers is a form of reverse competition; when insurers compete for servicers' business by offering higher commissions to servicers' affiliates, there is no incentive to reduce force-placed insurance premium rates. Commissions are paid to affiliates of servicers because they are a cost of staying in the market, not for any particular work the affiliates perform.

*Id. at p.7-8, ¶¶ 16-17* (emphasis added).

-12-

1   practice is contrary to the 45-day advance notice requirement that applies under federal law. *See*

2   *supra* at 9-10. It is also inconsistent with a recent statement from the National Association of

3   Insurance Commissioners ("NAIC") that policies "should not be back-dated to collect premiums

4   for a time period that has already passed[.]" *Complaint, ¶ 40 & Ex. 13 at 2*. Accordingly,

5   numerous courts have held that allegations of backdating support a claim for breach of the

6   implied covenant of good faith and fair dealing. *See Lass*, 695 F.3d at 138-140; *Ellsworth*, 2012

7   WL 6176905, at *17-18; *McNeary*, 863 F. Supp. 2d at 958-59; *accord*, *Williams II*, 2011 WL

8   4901346, at *2-4 (allowing claim to proceed where plaintiffs alleged that lender "retroactively"

9   purchased "backdated" force-placed policies); *Am. Bankers Ins. Co. of Fla. v. Wells*, 819 So.2d

10  1196, 1204 (Miss. 2001) (plaintiffs stated valid claim that lender breached the covenant of good

11  faith and fair dealing by "[i]llegally backdating worthless insurance coverage").

12  **III.    Plaintiffs Have Stated a Valid UCL Claim Against Wells Fargo**

13          Plaintiffs also have stated a valid claim for unfair business practices against Wells Fargo

14  under the UCL. *See* Cal. Bus. & Prof. Code § 17200. Based on allegations similar to those in

15  this case, UCL claims have been allowed to proceed in several other force-placed insurance cases.

16  *See Lane II*, 2013 WL 1758878, at *4 (denying motion to dismiss UCL claim for unfair business

17  practices based on allegations of backdated coverage and improper commissions); *Ellsworth*,

18  2012 WL 6176905, at *19-21 (same); *McNeary*, 863 F. Supp. 2d at 959-61 (same); *Hofstetter v.*

19  *Chase Home Fin., LLC,* 2011 WL 1225900, at *15-16 (N.D. Cal. July 20, 2011) ("*Hofstetter II*")

20  (certifying classes to pursue unfair business practices claim under UCL based on allegations of

21  unauthorized coverage and improper commissions paid to lender's affiliate); *Wahl v. Am. Sec.*

22  *Ins. Co,.* 2010 WL 1881126, at *7 (N.D. Cal. May 10, 2010) ("*Wahl I*") (plaintiff stated valid

23  unfair business practices claim under UCL by alleging that defendant force-placed worthless

24  insurance coverage on her property). This Court should reach the same result. At this stage, the

25  Court certainly cannot conclude that Wells Fargo's conduct was fair as a matter of law. *See*

26  *McNeary*, 863 F. Supp. 2d at 962 ("The Court declines to grant Defendants' Motion on the

27  'unfair' prong of the UCL claim … because the Court cannot say, as a matter of law, that

28

-13-

Defendants alleged conduct would not violate any of the three tests for unfair conduct.").[15]

## IV.    Plaintiffs Have Stated a Valid Unjust Enrichment/Restitution Claim Against WFI

Plaintiffs also are entitled to proceed with their unjust enrichment/restitution claim against WFI.  This claim, like Plaintiffs' other claims, is well-supported by several decisions that have upheld unjust enrichment claims based on similar allegations of improper kickbacks and backdated coverage.  *See Lass*, 695 F.3d at 140-41; *Cannon*, 2013 WL 132450, at *23-24; *Ellsworth,* 2012 WL 6176905, at *18-19; *McNeary,* 863 F. Supp. 2d at 964; *Ulbrich v. GMAC Mort., LLC*, 2012 WL 3516499 (S.D. Fla. Aug. 15, 2012); *Williams v. Wells Fargo Bank, N.A.*, 2011 WL 4368980, at *1-2, 8-10 (S.D. Fla. 2011) ("*Williams I*"); *accord, Lane I*, 2013 WL 269133, at *10; *Casey v. Citibank, N.A.*, --- F. Supp. 2d ---, 2013 WL 11901, at *7 (N.D.N.Y. Jan. 2, 2013).

Although WFI argues that California does not recognize a cause of action for unjust enrichment, *see Wells Fargo Memo at 16*, it is mistaken.  Numerous California courts, as well as the Ninth Circuit, have recognized a cause of action under California law for unjust enrichment. *See, e.g.*, *Western Pac. R. Corp. v. Western Pac. R. Co.,* 206 F.2d 495, 498 (9th Cir.1953) ("It is of course true that California courts … recognize a cause of action based on unjust enrichment"); *Ellsworth*, 2012 WL 6176905, at *18 ("Courts in this district have held that California law permits unjust enrichment claims …"); *accord*, *Ben & Jerry's Franchising, Inc. v. Porghavami*, 418 Fed. App'x 607 (9th Cir. 2011); *In re Atkinson*, 14 Fed. App'x 960, 962 (9th Cir. 2001); *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 50 (1996); *Ward v. Taggart*, 51 Cal. 2d 736, 742 (1959); *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2008); *Hirsh v. Bank of Am.*, 107 Cal. App. 4th 708, 722 (2003).  While there is some disagreement over this issue, "the confusion is largely

---

[15] The fact that WFB breached its mortgage contract and its duty of good faith and fair dealing further supports Plaintiffs' UCL claim against WFB.  *See Lane II*, 2013 WL 1758878, at *6 ("[A] breach of contract claim can support a Section 17200 claim because it can be an *unfair* business practice.") (emphasis in original) (citing *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1483 (2005)); *Gabana Gulf Distrib., Ltd. v. GAP Int'l Sales, Inc.*, 2008 WL 111223, at *10 (N.D. Cal. Jan. 9, 2008) (plaintiff "may use the [common law breach of covenant of good faith and fair dealing] claim as a predicate for § 17200 liability").

semantic." *McNeary*, 863 F. Supp. 2d at 964.  Even though some California courts "may not recognize unjust enrichment as an independent claim, such a claim may be understood as one for restitution, which is recognized under California law." *Id.* (citing *Nordberg v. Trilegant Corp.*, 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006)).[16]  Consistent with this case law, Plaintiffs pled their cause of action in Count Five as one for "Unjust Enrichment/Restitution."  It is frivolous for Wells Fargo to argue that no such cause of action exists under California law.[17]

Contrary to WFI's arguments (*Wells Fargo Memo at 17*), Plaintiffs' unjust enrichment/restitution claim is not "duplicative" simply because they also assert a UCL claim. Numerous cases have allowed plaintiffs to move forward with both a UCL claim and a claim for unjust enrichment/restitution.  *See, e.g.*, *Ellsworth*, 2012 WL 6176905, at *18; *McNeary*, 863 F. Supp. 2d at 964; *Rush v. Nutrex Research, Inc.*, 2012 WL 2196144, at *9-10 (N.D. Cal. June 13, 2012); *Chavez v. Bank of Am. Corp.*, 2012 WL 1594272, at **8, 10 (N.D. Cal. May 4, 2012) (Spero, J.); *Nordberg*, 445 F. Supp. 2d at 1100-1101.  Each cause of action has separate elements, and it is possible that Plaintiffs "may prevail in one cause of action and not in the other." *Nordberg*, 445 F. Supp. 2d at 1100-1101.  Thus, "it is inappropriate at this early stage in the litigation to determine whether other remedies available to Plaintiff[] are adequate." *Keilholtz v. Superior Fireplace Co.*, 2009 WL 839076, at *5 (N.D. Cal. Mar. 30, 2009).  Moreover, the scope of the claims is vastly different because Plaintiffs' unjust enrichment/restitution claim is asserted on behalf of a nationwide class, whereas their UCL claim is necessarily limited to a class of California residents.  *Complaint, ¶¶ 60, 63-64.*

Finally, WFI's argument that Plaintiffs' unjust enrichment claim is "precluded by the existence of the deed of trust" (*Wells Fargo Memo at 17*) is flawed for several reasons.  First,

---

[16] *See also Shum v. Intel Corp.*, 499 F.3d 1272, 1279 (Fed. Cir. 2007) ("Under California law, unjust enrichment claims can exist as a separate cause of action when the claim is grounded in equitable principles of restitution.") (internal quotation marks and citations omitted); *Dorr v. Yahoo! Inc.*, 2007 WL 2215445, at *2 (N.D. Cal. July 30, 2007) ("California law recognizes a cause of action for restitution (sometimes also called unjust enrichment)[.]"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4345435, at *3 (N.D. Cal. Sept. 15, 2011).

[17] Notably, Wells Fargo does ***not*** argue that there is no cause of action for restitution.  It simply argues that "California does not [] recognize a cause of action for unjust enrichment." *Wells Fargo Memo at 16.*

-15-

Plaintiff does not have a contract with WFI and does not assert a breach of contract claim against WFI. *See Cannon*, 2013 WL 132450, at *23; *Williams I*, 2011 WL 4368980, at *11; *accord*, *Morris v. Wells Fargo Bank, N.A.*, 2012 WL 3929805 (W.D. Pa. Sept. 7, 2012), at *10 (allowing unjust enrichment claim to proceed against insurance company based on allegedly improper kickbacks in connection with force-placed insurance, even though mortgage contract barred plaintiff's unjust enrichment claim against bank). Second, even if WFI were a party to the Mortgage and Plaintiffs were asserting a claim against WFI based on the Mortgage (neither of which are true), Plaintiffs would be entitled to pursue their unjust enrichment claim as an alternative cause of action. *See Lass*, 695 F.3d at 140 ("it is accepted practice to pursue both theories at the pleading stage"); *accord*, *McNeary*, 863 F. Supp. 2d at 964-65 (allowing plaintiff to pursue contract claim and unjust enrichment claim against bank in connection with its force-placed insurance practices); *Ellsworth*, 2012 WL 6176905, at *15-19 (same); *Casey*, 2013 WL 11901, at *7(same).[18] Lastly, as noted *supra* at 2-3, the Mortgage does not specifically authorize commissions to the lender or backdating of force-placed policies. *See Lass*, 695 F.3d at 140 (holding that unjust enrichment claim was not barred by mortgage because the mortgage did not explicitly address the subject of commissions in connection with force-placed coverage); *Cannon*, 2013 WL 132450, at *23.

## V.    Plaintiffs' Claims Are Not Preempted By Federal Law

Contrary to the arguments raised by Wells Fargo (*Wells Fargo Memo at 11-15*), Plaintiffs' claims are not preempted by federal law.  In several other force-placed insurance cases involving similar claims of improper kickbacks and/or backdating, this purported preemption defense has been rejected. *See Lane I*, 2013 WL 269133, at *14 ("At this early stage of the litigation, plaintiffs' common law claims have not been shown to be preempted, nor has Wells Fargo demonstrated that refraining from the challenged wrongful conduct would prevent or significantly interfere with its ability to engage in the business of banking.") (internal quotation marks and

---

[18] *Accord*, *DSU Aviation, LLC v. PMCT Aviation, LLC*, 2007 WL 3456564, at *2 (N.D. Cal. Nov. 14, 2007) ("Because the Court understands Plaintiffs' claim for unjust enrichment to be a claim for restitution pled in the alternative to their breach of contract claim, Defendants' Motion to Dismiss this cause of action is DENIED.").

citation omitted); *Cannon*, 2013 WL 132450, at *21 ("[T]he court rejects Wells Fargo's preemption argument"); *Ellsworth,* 2012 WL 6176905, at *12 ("The court follows the weight of authority and finds that the NBA does not preempt the challenges that [plaintiff] raises to the alleged kickbacks and backdating); *Williams II*, 2011 WL 4901346, at *7-11; *Kunzelmann*, 2012 WL 2003337, at *5.  This Court should reach the same result.

### A. Wells Fargo Analyzes the Wrong Federal Statute

As an initial matter, Wells Fargo focuses its preemption analysis on the wrong federal statute.  Because WFB is a national bank, the applicable preemption analysis is governed by the National Bank Act ("NBA"), not the Home Owners' Loan Act ("HOLA").  Although Plaintiffs' loan was originated by Wachovia (a former thrift subject to regulation under HOLA), Plaintiffs do not assert vicarious liability claims against Wells Fargo as the successor-in-interest to Wachovia based on alleged misconduct by Wachovia at the time their loan was originated. Rather, Plaintiffs assert direct claims against Wells Fargo based on alleged misconduct in connection with the servicing of their loan *after* WFB acquired Wachovia.[19]  For this reason, the case law cited by Wells Fargo (*Appling*) is inapplicable, and the proper preemption analysis falls under the NBA.  *See, e.g., Avila v. Wells Fargo Bank, N.A.*, 2012 WL 2953117, at *11 (N.D. Cal. July 19, 2012) ("[T]his order questions the applicability of HOLA where the alleged conduct occurred after Wachovia's merger with Wells Fargo …."); *Ramirez v. Wells Fargo Bank, N,A*, 2011 WL 1585075, at *7 (N.D. Cal., Apr. 27, 2011) (applying NBA preemption analysis instead of HOLA analysis to claims against WFB based on alleged misconduct following Wachovia merger); *Valtierra v. Wells Fargo Bank, N.A.*, 2011 WL 590596, at *4 (E.D. Cal. Feb. 10, 2011) ("Causes of action arising on or after [the merger date] will not be preempted …").[20]

---

[19]  WFB acquired Wachovia on or about December 31, 2008.  *See Complaint, ¶ 18*; *accord*, https://www.wellsfargo.com/press/2009/20090101_Wachovia_Merger (last visited May 4, 2013).  Wachovia is no longer an active federal savings association.  *See* http://www.occ.treas.gov/topics/licensing/national-bank-lists/thrifts-by-name-v2.pdf (last visited April 17, 2013).

[20]  *Accord*, *Rodriguez v. U.S. Bank, N.A.*, 2012 WL 1996929, at *7 (N.D. Cal. June 4, 2012) ("Although the loan originated with … a federally-chartered savings association, U.S. Bank is a federally chartered national bank governed by the National Bank Act. This Court has taken the position that whether HOLA governs the action depends on when the alleged conduct occurred."); *Scott v. Wells Fargo Bank, N.A.*, 2011 WL 3837077, at *5 (D. Minn. Aug. 29, 2011).

-17-

**B.     The NBA Does Not Preempt Plaintiffs' Claims**

The preemptive scope of the NBA with regard to real estate lending is set forth in 12 C.F.R. § 34.4.  Subdivision (a) of this regulation lists several areas in which national banks may make real estate loans without regard to state law limitations.  12 C.F.R. § 34.4(a).  However, subdivision (b) provides that:

> State laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent consistent with the decision of the Supreme Court in *Barnett Bank of Marion County, N.A. v. Nelson Florida Insurance Commissioner, et al.,* 517 U.S. 25 (1996):
>
> (1)     Contracts;
> (2)     Torts; . . . and
>                 * * *
> (9)     Any other laws that the OCC determines to be applicable to national banks in accordance with the decision of the Supreme Court in *Barnett Bank*… or that is made applicable by Federal law.

12 C.F.R. § 34.4(b).  Under this framework, states are permitted to regulate the activities of national banks where doing so "does not prevent or significantly interfere with the national bank's exercise of powers."  *Barnett Bank,* 517 U.S. at 33.  Thus, claims under state laws of general application "which merely require all business (including banks) to refrain from misrepresentations and abide by contracts and representations to customers" are not preempted.  *Jefferson v. Chase Home Fin.,* 2008 WL 1883484, at *10 (N.D. Cal. Apr. 29, 2008); *accord*, *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 554 (N.D. Cal. 2012) (Spero, J.) ("The Court concludes that the particular claims made in this matter are not preempted because they are based on state laws of general application."); *Rodriguez*, 2012 WL 1996929, at *7 ("The preemption analysis depends on the extent to which the claims rely on generally applicable state laws[.]").[21]

---

[21] The same principles apply under 12 C.F.R. § 7.4002.  That regulation does not articulate its own preemption standard.  Instead, it simply provides that "[t]he OCC applies preemption principles derived from the United States Constitution, as interpreted through judicial precedent, when determining whether State laws apply that purport to limit or prohibit charges and fees described in this section."  12 C.F.R. § 7.4002(d).  In any event, Section 7.4002 has no application here because Plaintiffs are not challenging WFB's authority to set fees.  *See Ellsworth*, 2012 WL 6176905, at *11 ("[T]he weight of authority supports the conclusion that the allegations about kickbacks and backdating here are not about the fees themselves and instead challenge practices and [the] Bank's compliance with its contractual obligations.").  There is no such thing as "kickback-setting authority" under Section 7.4002, and Plaintiffs' backdating allegations are based on the coverage period, not the cost of coverage.

-18-

Here, Plaintiffs' claims are contract or tort claims of general applicability that are not targeted specifically at banking activity.[22]  Although Wells Fargo argues that these claims would somehow "significantly impair banking activities[,]" *Wells Fargo Memo at 14*, nothing could be further from the truth.  Plaintiffs do not challenge Wells Fargo's right to force-place insurance,[23] but rather only challenge the unfair manner in which Wells Fargo has manipulated the force-placed insurance process.  *See Cannon*, 2013 WL 132450, at *20 ("Contrary to what Wells Fargo suggests, Plaintiffs are not challenging Wells Fargo's authority to force-place insurance; rather their challenge is to the manipulation of the force-placed insurance process.").  Similarly, Plaintiffs do not challenge Wells Fargo's ability to charge borrowers the premiums associated with force-placed insurance; instead, they challenge Wells Fargo's market-distorting kickback scheme.  *See Losel v. Chase Bank, N.A.*, 2012 WL 3778960, at *4-5 (E.D. Cal. Aug. 31, 2012) (plaintiff's claims not preempted where plaintiff did not allege that bank's interest rates were illegal, but instead asserted that the bank's "business practices are unlawful and unfair and as a result plaintiff is charged a higher interest rate than anticipated").  Accordingly, Plaintiffs' claims fall squarely within the exemption to preemption found in 12 C.F.R. § 34.4(b)(1)-(2).  *See Ellsworth,* 2012 WL 6176905, at *9 (finding that plaintiff's "breach of contract claims fall[] within the section 34.4(b) exception to NBA preemption for claims under state contract laws.  As to the unjust enrichment and unfair competition claims, the court cannot find on the record that they substantially interfere with [the] Bank's fee-setting power."); *Lane I*, 2013 WL 269133, at *14 ("Plaintiffs seek to enforce the terms and covenants agreed to by the parties, an area governed by state contract law and explicitly identified as among the areas of state law generally not preempted by the OCC regulations."); *Kunzelmann,* 2012 WL 2003337, at *5; *Williams II*, 2011

---

[22] "In contrast to findings of federal preemption in cases involving specific state regulations that conflict with NBA, causes of action sounding in contract, consumer protection statutes[,] and tort have repeatedly been found by federal courts not to be preempted."  *Williams II*, 2011 WL 4901346, at *8 (quoting *Baladanzi v. WFC Holdings Corp.,* 2008 WL 4924987, at *2 (S.D.N.Y. Nov. 14, 2008)).

[23] In their Complaint, Plaintiffs expressly state that "lenders generally have the right to force-place flood insurance where the property securing the loan falls in a SFHA and is not insured by the borrower[.]"  *Complaint, ¶ 2.*

-19-

WL 4901346, at *10-11.[24]

In addition, Plaintiffs' claims fall within the exemption for laws "which the OCC determines to be applicable to national banks[.]" 12 C.F.R. 34.4(b)(9). In a previous advisory letter, the OCC noted that "[a] number of state laws prohibit unfair or deceptive acts or practices, and such laws may be applicable to [national banks]." *OCC Advisory Letter, Guidance on Unfair or Deceptive Acts or Practices, AL 2002-3*, 2002 WL 521380, at *2 n.2 (Mar. 22, 2002). In the same letter, the OCC warned that "[t]he consequences of engaging in practices that may be unfair or deceptive under federal or state law can include litigation[.]" *Id.* at *1. Moreover, in the context of flood insurance, the OCC has specifically stated that "there may be penalties for over-insurance under applicable law." 74 Fed. Reg. at 35,918. If the OCC does not believe that these types of claims are preempted, there is certainly no reason for this Court to find them preempted. Notably, none of the cases cited by Wells Fargo in the section of its brief relating to the NBA

---

[24] In *Martinez v. Wells Fargo Home Mortgage, Inc.*, 598 F.3d 549 (9th Cir. 2010), the Ninth Circuit reiterated that "[s]tate laws of general application, which merely require all businesses (including national banks) to refrain from fraudulent, unfair, or illegal behavior, do not necessarily impair a bank's ability to exercise its real estate lending powers." *Id.* at 555. Although the court found that the plaintiffs' UCL claim in that case was preempted, the alleged misconduct in *Martinez* was different than the alleged misconduct here. The plaintiffs in *Martinez* directly challenged the amount of the fees that they were charged for underwriting and tax services, and claimed that those fees were "too high." *Id.* at 556. By contrast, Plaintiffs challenge Wells Fargo's overall scheme to manipulate the force-placed insurance process by purchasing backdated coverage and by arranging for kickbacks for itself and/or its affiliates. The *Williams* court expressly distinguished *Martinez* on this basis:

> Here, unlike in *Martinez,* Plaintiffs are not merely challenging the imposition of the force-placed premiums or the amounts of those premiums. Instead, they challenge the manipulation of the force placed insurance process in general, the payment arrangement between [the] Bank and the other Defendants, and [the] Bank's participation in the overall scheme intended to provide illegal kickbacks and commissions to the entities involved. Whereas in *Martinez* the bank simply imposed a fee directly on the plaintiff, here, [the] Bank is alleged to have colluded with other entities in bad faith in order to develop a scheme whereby the entities could manipulate the force-placed insurance process to their benefit. Both the unjust-enrichment claim and breach-of-the-implied-covenant claim are aimed at that manipulation of the force-placed insurance process. Thus, the claims raised by Plaintiffs significantly differ from those raised in *Martinez*.

*Williams II*, 2011 WL 4901346, at *11 n.7; *accord*, *Ellsworth*, 2012 WL 6176905, at *10.

-20-

1    support a finding of preemption in the context of this case.[25]

2         **C.**    **Plaintiffs' Claims Are Not Preempted by the HOLA**

3        Even if the HOLA applied to Plaintiffs' claims against Wells Fargo (which it does not),

4    Plaintiffs' claims still would not be preempted. Similar to the regulations that apply to national

5    banks (such as Wells Fargo) under the NBA, the regulations that apply to savings associations

6    under the HOLA also exempt contract and tort claims from preemption, to the extent that they

7    only incidentally affect the lending operations of federal savings associations. *See* 12 C.F.R. §

8    560.2(c)(1), (4). As explained above, Plaintiffs' claims are general contract and tort claims that

9    only incidentally affect lending operations. *See supra* at 19. Accordingly, they are not preempted

10   under the HOLA. *See Gibson v. World Sav. & Loan Ass'n,* 103 Cal. App. 4th 1291 (2002)

11   (finding similar claims relating to force-placed insurance not preempted by HOLA); *accord,*

12   *Avila*, 2012 WL 2953117, at *11 ("[E]ven assuming HOLA is applicable, plaintiff's claims are

13   not preempted … [P]laintiff's state-law contract claims only incidentally affect lending operations

14   because plaintiff is challenging defendant's general conduct …, not the substance of its lending

15   practices such as terms of credit, disclosures, or advertising."); *Roussel v. Wells Fargo Bank*,

16   2012 WL 5301909, at *4-5 (N.D. Cal. Oct. 25, 2012); *Bertoli v. Wachovia Corp., FSB,* 2011 WL

17   5244687, at *3 (N.D. Cal. Nov. 3, 2011).

18       The *Gibson* case is directly on point. In *Gibson*, the plaintiffs asserted claims against a

19   predecessor of Wachovia for improper force-placed insurance practices, including claims for

20   breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and

21   unfair business practices. *Gibson,* 103 Cal. App. 4th at 1294. Similar to the present case, the

---

22   [25] The preemption cases cited by Wells Fargo are inapposite. *See Wells Fargo Memo at 14-15.*
23   For example, *Baptista v. JPMorgan Chase Bank N.A.,* 640 F.3d 1194, 1196-98 (11th Cir. 2011)
     involved a challenge to the national bank's fee setting power for cashing a check, not anything
24   related to force-placed flood insurance. Similarly, in *Rose v. Bank of Am. Corp.,* 2010 WL
     8435397, at *1 (C.D. Cal. Nov. 5, 2010), the challenged conduct involved failing to disclose that
25   certain credit card customers did not qualify for defendant's debt cancellation service, which
     again had nothing to do with force-placed flood insurance. Lastly, in *Selman v. CitiMortgage,*
26   2013 WL 838193, at *3-*5 (S.D. Ala. Mar. 5, 2013), the plaintiffs did not contest that their claim
     fell within the scope of NBA preemption, but instead argued that the defendant bank was not a
27   national bank subject to the NBA. *Id.* at 4. The only question before the court, therefore, was
     whether the bank in question was in fact a national bank.
28

plaintiffs in *Gibson* alleged that the defendant purchased forced-order insurance policies "from an insurer of its own choice; that those FOI policies were much more expensive than the borrowers' policies; that [defendant] benefited financially from purchasing the more expensive policies; and that by charging the borrowers for the full price of the FOI policies, [defendant] violated the terms of the borrowers' deeds of trust, which authorized [defendant] to advance funds on behalf of the borrowers only to the extent necessary to protect [defendant's] rights." *Id.* After engaging in a thorough legal analysis, and after considering the arguments submitted by the parties and certain *amici* (including the OTS), the court held that the plaintiffs' claims were not preempted. *Id.* at 1295-1307. There is no reason to reach a different result here.[26]

Moreover, like the OCC, the OTS was a sponsor of the 2009 Interagency Questions and Answers Regarding Flood Insurance, which state that "there may be penalties for over-insurance under applicable law." 74 Fed. Reg. at 35,918; *accord*, *OTS Letter P-96-14*, 1996 WL 767462 (December 24, 1996) ("[N]othing in federal law preempts general deceptive practices statutes. The Association is required to comply with the Indiana DAP and those deceptive practices statutes of other states that are worded in a manner to apply to the Association's loans."). Thus, Plaintiffs' claims also fall within the exemption in 12 C.F.R. § 560.2(c)(6) for claims that the OTS finds not to be preempted because they further a vital state interest and have only an incidental effect on lending operations.[27]

---

[26] The case law cited by Wells Fargo is not to the contrary. *See Wells Fargo Memo at 13.* Only two of the cited cases (*Ocwen* and *Schilke*) involved force-placed insurance. In *Ocwen*, the Seventh Circuit actually affirmed a district court order that ***denied*** a motion to dismiss on the basis of HOLA preemption, and specifically found that the plaintiffs' claims would ***not*** be preempted if the loan contracts at issue forbade the loan servicer from charging inflated premiums for force-placed insurance. *See In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*, 491 F.3d 638, 647 (7th Cir. 2007). In *Schilke*, the court emphasized that the exception to HOLA preemption for contract-based claims did not apply because the plaintiff received a disclosure at closing specifically stating that commissions may be paid to the lender's affiliate in connection with force-placed insurance. *See Schilke v. Wachovia Mortg., FSB*, 820 F. Supp. 2d 825, 833 (N.D. Ill. 2011). The facts of the present case are different. Thus, *Schilke* is distinguishable on its facts. *See Ellsworth,* 2012 WL 6176905, at *16 (distinguishing *Schilke* on this basis).

[27] The 1999 OTS opinion letter cited by Wells Fargo provides little, if any, support for its position. *See Wells Fargo Memo at 13* (*citing OTS Letter P-99-3*, 1999 WL 413698 (Mar. 10, 1999)). The opinions expressed in that letter were limited to the specific facts and circumstances presented in the letter, which were "materially different" from those in *Gibson* and in this case.

-22-

**VI.    Plaintiffs' Claims Are Not Barred by the Filed Rate Doctrine or the California Insurance Code**

Wells Fargo also cannot hide behind the filed-rate doctrine or the California Insurance Code as a defense to Plaintiffs' claims. *See Wells Fargo Memo at 8-11.* Several courts have rejected this defense in other force-placed insurance cases involving Wells Fargo and other defendants. *See Cannon*, 2013 WL 132450, at *8; *Ellsworth*, 2012 WL 6176905, at *13-*14; *Kunzelmann*, 2012 WL 2003337, at *2-3; *Wahl II*, 2010 WL 4509814, at *2-3; *Abels*, 678 F. Supp. 2d at 1277. This Court should reach the same result.

Wells Fargo cannot credibly argue that the issues in this case are exclusively regulated by federal banking authorities, and at the same time, argue that these issues fall within the exclusive purview of state insurance commissioners. Aside from this blatant inconsistency, the filed-rate doctrine does not apply to claims against Wells Fargo because it does not file rates with the California Department of Insurance and is not regulated under the California Insurance Code. *See Abels*, 678 F. Supp. 2d at 1277; *accord, Loe v. State Farm Ins. Companies*, 164 F.3d 630, 1998 WL 690923, at *1 (9th Cir. Sept. 25, 1998) (California Insurance Code only applies to "***insurers'*** rating and underwriting decisions") (emphasis added); Cal. Ins. Code § 1858.3 (Insurance Commissioner's powers limited to making determinations regarding insurers, rating organizations, advisory organizations, or other organizations of insurers). Wells Fargo has not cited a single case which has held that claims against a national bank are preempted by the California Insurance Code. There is no reason for this Court to reach such a novel result here.

Even if the filed-rate doctrine did somehow apply to Plaintiffs' claims against Wells Fargo (which it does not), the filed-rate doctrine still would not bar Plaintiffs' claims. Section 1861.03 of the Insurance Code expressly provides that "***[t]he business of insurance shall be subject to the laws of California applicable to any other business, including, but not limited to ... unfair***

---

*See Gibson*, 103 Cal. App. 4th at 1306 ("The claim described in the OTS Opinion is materially different from the claim asserted … here."). To the extent that the this letter has any relevance to Plaintiffs' claims in this case, which are not brought exclusively under the UCL, the 1999 opinion letter has been superseded by the 2009 Interagency Questions and Answers, which recognizes that there may be claims under state law for unfair force-placed insurance practices.

-23-

1    ***business practices laws[.]***"  *Wahl II*, 2010 WL 4509814, at *2 (*quoting* Cal. Ins. Code §

2    1861.03(a)) (emphasis added).  Although there is a limited exception to this rule for "a claim that

3    directly challenges a rate," this exception is "narrow" and does not apply to claims relating to

4    unfair conduct in connection with force-placed insurance.  *Wahl II*, 2010 WL 4509814, at *2-3

5    (citing *MacKay v. Superior Court*, 188 Cal. App. 4th 1427, 1443 (2010)).

6          Here, Plaintiffs challenge Wells Fargo's unfair manipulation of the force-placed insurance

7    process, not the rates that Wells Fargo or any other entity has filed with the California DOI.

8    Accordingly, Plaintiffs' claims are not barred by the California Insurance Code.  *See*

9    *Kunzelmann*, 2012 WL 2003337, at *3 ("[I]n this case Plaintiff's claims are not barred by the

10    filed rate doctrine because he is not challenging the rates filed by Defendants' insurers.  Rather,

11    Plaintiffs challenge the manner in which Defendants select insurers, the manipulation of the

12    force-placed insurance process, and the impermissible kickbacks that were included in the

13    premiums.").  Plaintiffs' backdating allegations have nothing to do with premium rates, and are

14    very similar to the type of allegations that were found ***not*** to be barred by the California Insurance

15    Code in *Wahl.  See Wahl II*, 2010 WL 4509814, at *3 (denying second motion for judgment on

16    the pleadings, where the plaintiff alleged that defendant force-placed worthless insurance

17    coverage for improper time periods).  Moreover, numerous courts have recognized the difference

18    between a challenge to a filed rate and a challenge to an improper kickback.  *See, e.g., Ellsworth*,

19    2012 WL 6176905, at *14 ("[Plaintiff] does not challenge the rates or the premiums he paid but

20    instead challenges the alleged kickbacks."); *Cannon*, 2013 WL 132450, at *9 ("[T]he filed rate

21    doctrine would not protect a loan servicer who chooses a carrier and a policy with a rate higher

22    than others simply to receive a kickback not available from other carriers."); *Kunzelmann*, 2012

23    WL 2003337, at *3; *Abels*, 678 F. Supp. 2d at 1276-77.[28]

24

25

26   [28] *See also Kay v. Wells Fargo & Co.*, 247 F.R.D. 572, 576 (N.D. Cal. 2007); *Munoz v. PHH Corp.*, 659 F. Supp. 2d 1094, 1100-1101 (E.D. Cal. 2009); *Abels*, 678 F. Supp. 2d at 1276-77;

27   *Gipson*, 232 F. Supp. 2d at 707; *Alston v. Countrywide Finan. Corp.*, 585 F.3d 753, 765 (3d Cir. 2009); *Alexander v. Washing Mut., Inc.*, 2008 WL 2600323, at *3 (E.D. Pa. June 30, 2008);

28   *Blaylock v. First Am. Title Ins. Co.*, 504 F. Supp. 2d 1091, 1103 (W.D. Wash. 2007); *Robinson v. Fountainhead Title Group Corp.*, 447 F. Supp. 2d 478, 486-89 (D. Md. 2006).

-24-

**VII.    Plaintiffs' Request For Exemplary Damages Is Valid**

Finally, Wells Fargo's request to strike Plaintiffs' request for exemplary damages is baseless.    In their Complaint, Plaintiffs judiciously limited this request to their unjust enrichment/restitution claim against WFI.   Under California law, it is well-established that exemplary damages are available in connection with a claim for unjust enrichment.  *See Ward*, 51 Cal. 2d at 743; *McLaughlin v. Nat'l Union Fire Ins. Co.*, 23 Cal. App. 4th 1132, 1165 (1994) ("[I]n Ward, our Supreme Court approved punitive damages on an unjust enrichment theory of recovery[.]") (internal citation omitted).  Wells Fargo does not cite any contrary authority.  The UCL cases cited by Wells Fargo are irrelevant, as Plaintiffs are not seeking punitive damages in connection with their UCL claim.

Plaintiffs' 28-page Complaint, and the 20 exhibits attached thereto, provide more than adequate support for their request for exemplary damages.  Plaintiffs specifically allege that (1) WFI engaged in a systematic scheme to manipulate the force-placed insurance process by arranging for backdated coverage and kickbacks for itself, *Complaint, ¶¶ 2-5*; (2) WFI knew that the practices at issue were unjust and unlawful, *id. ¶¶ 115-16*; and (3) WFI decided to engage in these improper practices anyway because of the financial benefits.  *Id. ¶ 47.*  These underlying allegations demonstrate "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others," and thus meet the standard for exemplary damages under California law.  *See* Cal. Civ. Code § 3294(c)(1).

Although Wells Fargo attempts to justify the conduct at issue, it is far too early to make a finding of fact regarding whether WFI's conduct "rise[s] to the level required to impose exemplary damages."  *See Wells Fargo Memo at 19 n.12.*  That determination is more properly made on a full record at the end of the case.  *See Hofstetter I*, 751 F. Supp. 2d at 1131 ("[T]he appropriateness of the various remedies sought in the complaint need not be addressed until, if ever, the proceedings reach a point where liability is established and relief ordered.") *Keilholtz,* 2009 WL 839076, at *5.

**<u>CONCLUSION</u>**

For the foregoing reasons, Wells Fargo's motion to dismiss and strike should be denied.

-25-

1    Dated: May 7, 2013                         NICHOLS KASTER, PLLP

2                                         By:    /s/Kai H. Richter

3                                            Kai H. Richter

4                            Attorneys for Plaintiff and the Putative Classes

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO WELLS FARGO'S MOTION TO DISMISS, Case No. 4:13-cv-00708-JCS